against Google and others. Mr. Wilson. Yes. May it please the Court, Douglas Wilson of Heim Payne & Korsh for the Patent and Donor Appellant, Micrografx. Your Honors, I would like to make just four quick points. I'd like to start with the construction of external shape stored outside the computer program. Micrografx contended before the Board and before this Court that the construction of external shape stored outside the computer program was a mistake, was erroneous, in particular because the Board failed to take account of statements in the specification that characterized the invention as comprising the capability of adding shapes without modifying the underlying computer program. Even if you're right about the claim construction, wasn't the testimony undisputed that Walton doesn't require a modification of the house computer or whatever you want to call it? No, Your Honor, that's not correct. Laster testified to that, right? Laster did testify to that. The Board actually was presented with that point. We argued that under our construction, we should prevail and we had expert testimony to that effect. The Board refused to make a finding on that point. Where's the expert testimony that contradicts what Laster said? Well, that wasn't an issue that the Board actually addressed. The Board refused to address it. There's a record here. Where you say there was conflicting testimony that contradicted what Laster said, where is the conflicting testimony? I'll have to go back and look and see if we actually included that portion of the record because it was not something that the Board. I mean, I can't just take your word for it. No, I understand, Your Honor. I'll look during the break and see if I can locate that in the record that we've submitted. But, Your Honor, that was not a question that the Board addressed. It was not a finding that the Board made. But even if the record were undisputed on this, a remand wouldn't be necessary, would it? If the record were undisputed, that's correct, Your Honor, but the record is not undisputed. Okay, so that's the question. But I can at least find the citation in our brief before the Board where we cited the testimony that showed that this was disputed. The Board expressly refused to make a finding on that. It refused to resolve the conflict between our experts. Okay, proceed. If need be, you can make a separate submission after argument. Sure, Your Honor. So, back to the construction of external shapes stored outside of the computer program, the Board gave three reasons for refusing to adopt the portions of the specification that characterized the invention in the way I described. First, it said the specification attributes that to an architecture. With all due respect to the Board, the external shapes with external capabilities is the architectural feature that incorporates that functionality. The Board next said that functionality is attributable to a capability. Well, the capability is part of the external shape, so the Board's analysis undermined its own conclusion. Finally, the Board said that functionality is attributable to shape collection modules, which are, in fact, external shapes. Again, the Board's analysis undermined its own conclusion. So, there are many, many statements in the specification pointing to this, and we contend, Your Honors, if this Court believes that the Board erred on the construction of external shape, the case should at least be vacated and remanded. Including as to the motion to amend? So, the motion to amend is contingent upon the finding of anticipation. And the rejection, as I understand it, by the Board was contingent on its earlier anticipation finding as to the unamended claim. So, if that got vacated, then so would the ruling on the motion to amend. That's correct, Your Honor. But I would also like to address three additional points to the motion to amend. First, the construction of external shape templates. So, we proposed substitute claims for the two independent claims. The substitute claims added the limitation that the computer program be operable to delegate the production of graphics. Your argument is that it has to be generic, right? That's correct, Your Honor. That's the dispute. The dispute is micrographics needs to be a generic interface. And the whole point of adding that limitation was to try and capture the concept that the Board refused to adopt as part of its construction of external shape. Okay, but where, the problem I have is, where is their language and specification or prosecution history, whatever, that says a template is generic? So, the specification, and I can point, Your Honor, to specific passages if you would like. But the specification expressly describes the external shape template, which is the limitation being construed as comprising an external action template and an external symbol template. Okay, but where does it say it's generic? So, what the specification says, is, for example, at column 7, lines 32 to 37, the specification describes the external symbol method as generic external symbol methods. And the reason for that explanation is that the external symbols are intended to, or the external shape template is intended to give the computer program the capability of accessing shapes and capabilities that are completely unknown to the computer program. Yeah, but this isn't talking about the template, right? It is, in fact, Your Honor. It's describing the external symbol methods. These methods are contained within the external symbol template, which is part of the external shape template. As I mentioned, the external... How do I know that? Because the specification spells that out, Your Honor. Well, where does it tell me that this is referring to the template? Is this just the figure that you're referring to? Because the box around those two external symbols and actions is the template? That is part of it, Your Honor, but it's also, in the specification, it's also spelled out. If you look at column 5, line 59, says for shape 360 external action template, 332 points to external action, an external symbol template points to external symbol. And so is your suggestion that because the external symbol can be generic, the template has to be generic too? So what is described here is an architecture in which you have an external shape template. It's split up into symbols and actions. The symbols and actions each consist of an interface. That interface consists of a set of generic software methods, routines, that allow you to access, that give you the capability of sending, for example, commands or data to the shapes. The computer program doesn't know what the shapes are going to do with them. So what the specification says is those methods are generic in the sense that we're talking to an unknown shape with unknown capabilities. But the specification says the capability is exhaustive. It gives you the capability of communicating to shapes. You don't know what those shapes are or what they can do, but you have the capability of communicating exhaustively and allowing those shapes to do whatever it is they do with data that's input to the computer program. So the generic interface allows the passing of input data back and forth, input data to the shapes and response data back from the shapes to the computer program to allow them to do whatever they do without the computer programming having to know how or what the shapes are doing. That's what's described. Is there any expert testimony that says what you're telling us? Is there any expert testimony? This would be in the motion to amend. Let me look at the, I believe there is. I believe our expert, Mr. Kitchen, opined on this, but I'll have to check and confirm. But in any event, the specification says it right here at column five and column six. It explains in great detail exactly what I'm telling you. But if I may make a few final points on the motion to amend. The board found that the amended claims were unpatentable under its own construction, but under either construction, the board's finding of obviousness or its conclusion of obviousness was unsupported by the evidence that was before. What the board did was it said, here's Walton. Walton discloses everything except a template. If I can find a template anywhere, then I can combine that with Walton and you've got obviousness. Well, it didn't quite say that. If you find it in a place that they found a skilled artisan would have looked to combine it with. Right, but the whole reason for the combination is and here's a manual that refers to C++. The templates that are described in Stroustrup don't accomplish what's described here in columns five and six of this specification. Because they're not generic. Not only that, the templates that are described in Stroustrup are actually templates for code reuse. If I have a function that I want to use over and over again, I can make a template and it will apply to various data types in various applications and I only have to write that code once. Code reuse, that's exactly what they said. That is not what's described here as the external shape template. The external shape template is for accessing unknown code with unknown capabilities. That is precisely, the interface is even described as I unknown. That's what is described in the specification. That's what the external shape template does and that's why the board's obviousness determination is not supported by substantial evidence. There's no indication anywhere in the record, not in Laster's testimony, not in the board's opinion, of how you would combine the template to accomplish this. How you would compare or how you would reach the claimed invention as a whole given the template in Stroustrup. You can't. It just doesn't make any sense and there's no explanation of that in the board's findings or in Laster's testimony. And one final point, Your Honor. Pushing aside these issues, there is this en banc rehearing of in-ray aqua products. The board in this case clearly placed the burden of proof in the motion to amend on micrographics, which we contested at the board. So if given the en banc rehearing of in-ray aqua products, it's micrographic's position that at least if the board doesn't or if the court doesn't reverse or vacate and remand for some other reason, this case should be held pending the resolution of that appeal of the en banc rehearing of in-ray aqua products. We'll save your rebuttal time. Let me ask you, your position is sufficiently strong that with the amended claims the entire structure would have to be reviewed again? I guess I don't... Depending on what happens to the motion to amend, how significant is that to your argument? I guess I'm not understanding the question. You complained about the way the office handled the motion to amend. That's correct. And I want to have as clear an idea as I can of if in fact we agree that there was some lapse in that procedure as to how significantly it would affect the result. I think if the court were to find that there was an erroneous construction of external shape template or the obviousness determination that the board used to reject the amended claims, the court should reverse or vacate and remand as it sees fit. The only way I see this case being held for in-ray aqua products is if the court finds that neither of those are true. The court would affirm the board's determinations otherwise I think the case should be held because it's it's clear that the board placed the burden of proof on patentee micrographics. Okay, let's hear from the other side and we'll save you a little time. Thank you, your honor. Good morning and may it please the court. My name is David Omeling. I'm counsel for Appalese, Google, and Samsung. Unless the court would like me to go in a different order or to address different questions, I plan on addressing four points. One, the correct construction of external shape stored outside the computer program. Is there testimony that conflicts with Lasker's testimony about whether Walton satisfies that requirement or not? There is not, your honor. Walton's testimony at the appendix. Lasker's testimony. I'm sorry, thank you, your honor. Lasker's testimony at appendix 1109 through 1110 explaining that under either construction, Walton discloses that levitation is unrebutted. When was that testimony submitted to the record? That was as part of the second declaration of Lasker so that would accompany the reply. I'm sorry, on the reply. Yes, your honor. And so by then they didn't have an opportunity to submit additional evidence, is that right? They had the opportunity under the motion for observations and other procedures to submit. They also had the opportunity to argue at the oral hearing. Did they? Not as far as I know, your honor. The focus was, was the construction correct? Not, if micrographics construction was correct, would there be sufficient evidence? So I don't believe that it was argued. Going though to the fundamental question of what is the appropriate question, this was relatively extensively briefed and fully addressed in the board's decision at the appendix 7 through 12. I just want to make one point based on the arguments that were made today. And that point is to direct your honor's attention to the 633 patent at appendix 48, column 3, lines 32 through 38. This section talks about the capabilities of the shape and says that based on those capabilities, that quote, the computer graphics application 122 may be subsequently added to the computer graphics system 120 without modifying computer graphics application 112. In other words, the various places in the specification that identify the without modifying advantage, sometimes it's in relation to the invention, sometimes it's in relation to the system, sometimes the architecture, and here the capabilities of the shape. It is improper to import that into the external shape itself because of course the shape and the capabilities are different. Unless your honors have any additional questions about external shape, I'll move on to the second issue. Can I just double check something? The board's construction of, was it, is it just external shape or the whole phrase? The phrase, your honor. The phrase gives no meaning at all to the word external, right? That's not. It would be exactly the same if it just said a shape stored outside the computer and because of the shape it has to do graphical, then graphical image. What work is being done by the word external on that point? Two things are being done. One is, the question is, external means external or outside to something. By construing the phrase external shape stored outside the computer program, the board said external means outside the computer program. You said that in your brief, but it doesn't respond to the question of superfluity. The question is not whether stored outside the computer is superfluous to the word external, but whether the word external, in your view, is being treated as superfluous to the stored outside the computer. The phrase. Or outside the computer program. I forget what it is. Understood, your honor. The phrase has a meaning and it seeks to define where the external shape is going to be. The word. I'm not saying it is impossible for words to be treated as superfluous. We do belt and suspenders stuff in the law all the time. I'm just trying to establish the premise is, whether the premise is correct, that the board's construction leaves no meaning to the word external. We disagree with that premise, your honor. What meaning is it given that wouldn't be present if the word were not in the claim? If the word external was removed from the limitation and it just said state stored outside the computer program, that would go to the question, okay, what does a shape mean? And as the board described effectively, it means a bunch of different things. External shape, as that term is used in the patent, means something specific. That's something specific based on the clarification that it's outside the computer program refers to those elements in the specification that refer to the external shape as opposed to the shape itself. So it's not superfluous. It's just explaining how that concept is used in the specification and it's also consistent with every other time the board construed external something. External capabilities, external action, external symbol. All of which the patent is incredibly clear that there's a computer application and those things are outside of it. Moving on to the second question, the construction of the external shape template, and the argument was essentially we're trying to capture a concept, but as Judge Dye correctly noted, there's nothing in the specification that ties that concept that they're trying to create with the external shape itself. I want to make a couple points about this. So what about the parts of the specification that Mr. Wilson made reference to? All of those parts, and they're described in various places, and they were considered by the board, each of which, pages 1, 20, sorry, pages 29 and 30 of the record. All of those sections, without exception, are talking about characteristics of the external shape. The external shapes have an interface. The external shapes are generic. The external shape template, however, merely interacts with them. The specification refers to it as a pointer that points to them. Therefore, when you try to attribute those additional effects to the external shape, it doesn't tell you what's in the external shape template. As for the corollary argument that, well, because they're an interface between the two, all of the elements of the genericness, the interfaceness of the external shape must be imported in the external shape template, that's simply not what the specification says. Specification simply refers to it as a pointer, which gives an example, and merely as the interface between the two, which was correctly captured by the board's construction. And I want to make one point about the board's construction that I think got lost in the two. You have a construction of what a template means, which is preset format, pattern, or model, and then you have what it does by which it can access something. That first part that's being appealed, the preset format, pattern, model, was exactly what micrographics proposed in its motion to amend, and the board used that language. That incorporation is cited in, for example, page A29 of the record. So it's difficult for micrographics to argue against that construction now when it advanced it below under, among other things, this court's decision in invo-sys against next-tel. Can I take you back to this template discussion, particularly from column five through seven in the spec, which, say, starting column five, line 48, the external shape template 330, that's in the figure, the main figure that we were, all of them that we have, the box around two things where the box itself doesn't actually have a label on it, but that's what it is, comprises an external action template, that's one of the boxes, even though the word template doesn't appear in the figure, and an external symbol template. And then if you go to, and then there's paragraph after paragraph after paragraph of discussion of the two things that are in the box, at least one of which talks about the use of generic external symbol methods. Can you, I guess I don't really understand, do you dispute that the external symbol template is generic? It's not generic in the sense that it is, as that term is used in their briefing, it is, however. What is your understanding of the term generic that's in dispute here? So I think the specification answers that very clearly, but it doesn't do it in the paragraph that you cite. I'd like to direct your Honor's attention to column four, line 63, where it first uses external shape template and refers to it as a pointer. And then if you go back to the paragraph that you were citing, the first part of that paragraph contains a topic sentence on column five, line 43, that it is not comprised a predetermined set of actions and a symbol, rather it is in response to a device, the external shape template accesses the external shapes. In other words, a template is just that, it's an access point to something else. It could be a pointer, it could be a preset model as under the board's construction, but it's not this generic interface in the sense that you would have this template that you would then populate. The specification simply doesn't go that far. And what's your understanding of the board's construction on this point? Does that go beyond, does that require pointers to something else? Pointers would be an example of something that would fall within the board's construction, but it's not co-extensive with it. The board's construction is larger, the petitioner... And then they end up, you'll correct me if I'm misremembering this, but when the board applies its own construction of external shape template to find that thing in, is that in Strauss or in the C++ manual? It's in Walton by itself, but it's also in the combination of Walton and Or are they finding something else? I mean, you just described the spec here as saying, all this is doing is pointing to something else, whatever the thing is. My understanding is that their critical argument about the C++ manual is that those templates, you know for certain what's inside of it. It's not pointing to any number of unknown things. I don't think that that is established in the record, Your Honor, and I think the contrary is established. But going to your board, how did the board apply? The board applied its construction to Walton and the combination. It didn't imply the construction advanced by petitioners, which was pointers. But because pointers is a narrower part of the board's construction, it would necessarily find it if the court decided to go with pointers. But I want to go to Your Honor's questions about, well, what does Strauss-Trump disclose? Because here the record is entirely one-sided. There was no There was no argument in the reply or in the accompanying briefs about what Strauss-Trump did or did not disclose. In contrast, there's an expert declaration from Strauss-Trump that says, a person of ordinary skill in the art looking at this would understand what is meant by a template in this context and would use that template within the context of what Walton was. I'd like to conclude by addressing the final point raised by petitioner, which is what this decision under Henry Acqua would mean for this case. As an initial proposition, this was not raised at any point in the briefing, and therefore it is waived. Well, but the issue didn't exist back then. Respectfully, Your Honor, it did. If you look at the board's, I'm sorry, if you look at the motion to amend on page A837, the patent owner argued that the burden was improperly on the patent owner. So the patent owner presented this argument. Yeah, but there was intervening authority that that was not the case. So once that intervening authority came up, I don't think you'd expect someone in briefing before the panel to raise that issue. The It's one thing to say we got it wrong once, but to say that we got it wrong four times, maybe you'd use your, I mean, maybe we did, but you might choose to use your space in your brief for saying something else. Well, let's assume that it is before us. I'm interested in your comments on the proposed amendment and how that would change. So the answer to this question is part legal, part factual. The part legal is every panel who has ever looked at this decision, synopsis, ACWA, proletic, proxy comp, have all come out that the burden is correctly assigned. So that issue is firmly before the court in INRI ACWA. But factually here, it does not make a difference. In INRI ACWA, the court's decision was approximately three quarters of a page, applying a very limited analysis based on what the board did before, because the board said, the burden is on you. I don't need to consider all of your arguments. Here, the board had a 10-page decision in which it analyzed the affirmative evidence presented by the patent owners in the form of a declaration and in the form of argument. In response to that, there was not a declaration. There was no argument about Stroustrup. So if you look at the appropriate burden, even if it was shifted, which is... You're saying there's no factual issue. There's no factual issue. And the factual record is so one-sided that even if you affirmatively switch the burden to the petitioner, the petitioner fully satisfied that as the board determined in its 10-page decision, 828 through 38 of the record. Okay. Any more questions? Thank you. Thank you, Your Honors. Mr. Wilson? Yes, Your Honor. If I may briefly address the point raised by Judge Dyke earlier. Judge Dyke had asked for some citation to record evidence disputing the last testimony under our construction of external shapes stored outside the computer program. I believe if you will look at appendix pages 1033 through 34, you will see a citation to that evidence. I apologize. I do not believe the testimony that is cited in that passage is actually included in the record. But this is a reference in our brief to the declaration of Mr. Kitchen supporting our view that under our construction, Walton does not anticipate. So what are you referring to? Is it a brief that was submitted to the board? This is our brief to the board, our patent owner response. And where is the citation? So if you look at, say, about three lines from the bottom of page 1033, we say, Walton simply does not disclose that a user of the VSE system can create a new VSE object and make use of that VSE object in the user's user code without modifying the user code. It cites Lastra's deposition testimony. It also cites the Kitchen declaration of paragraph 42. That discussion continues on to the top of page 1034 with another site just before section three there to paragraphs 44 and 99 of Mr. Kitchen's declaration. So that issue was raised. It was disputed before the board. Addressing, if I may, the motion to amend. So to address the second point Judge Steich raised, I don't believe there's evidence in the appendix. I apologize. With regard to expert testimony on the meaning of external shape template, I don't see that in the portion of the record that we cited. But I want to address something regarding NREA aqua products that counsel petitioners raised, and that was the issue of the factual record being clear and one-sided in the context of the motion to amend. We actually believe the factual record is clear and one-sided as well. And that is, if you look at the four RAM factors for analysis and obviousness, Lastra's testimony doesn't meet those four factors. We did argue that the evidence does not support Lastra's conclusion of obviousness or the board's opinion. We raised these issues in front of the board. But the burden of proof does matter. The board said we didn't carry our burden. It's a very different thing for the board to look at Lastra's declaration with the Thank you. Thank you. This case is taken under submission.